pleaded at all in that court, and on appeal it has not been urged.

We will state, in conclusion, that while the object of this tax is highly worthy in view of the sum total of the tax, it is fortunate for the taxpayers that a goodly part of the time for which it was levied originally. has elapsed. There is fortunately a progressive decline of the amount of the tax each year.

For reasons stated, the judgment appealed from is affirmed, at appellants' costs.

(44 South. 290.)

No. 16,420.

SMITH v. ROCK ISLAND, A. & L. R. CO.

(June 10, 1907.    Rehearing Denied June 28, 1907.)

1. PLEADING—ANSWER—AMENDMENT—MASTER AND SERVANT—INJURIES TO SERVANT.

Where an employé sues his employer for damages for personal injuries received through the alleged fault or negligence of the latter, the latter can, in an amended answer, set up in defense that the plaintiff assumed the risk of the accident which happened, or that it resulted from the fault of a fellow servant, without changing the issue raised by a general denial. Defendant had the right, under the general issue, either by direct evidence, or through cross-examination, to bring out all the facts constituting the res gestæ of the accident.

2. MASTER AND SERVANT — NEGLIGENCE OF FELLOW SERVANT.

The fact that one employé receives injuries by reason of the act of a fellow workman does not necessarily relieve the employer from legal responsibility for the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 352.]

3. SAME—DANGEROUS METHOD OF WORK.

Where an employer adopts a method of doing his work which involves risks and danger greater than the nature of the work calls for, he should take correspondingly appropriate precautions to guard against the increased danger and risks.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 269, 270.]

(Syllabus by the Court.)

Appeal from Fifth Judicial District Court, Parish of Jackson; George Wear, Judge.

Action by Aurelius Smith against the Rock Island, Arkansas & Louisiana Railroad Company. Judgment for plaintiff. Defendant appeals. Affirmed.

Buzbee & Hicks and Barksdale & Barksdale, for appellant. Robert Wade Oglesby and Clayton & Hawthorn, for appellee.

Statement of the Case.

NICHOLLS, J.    This suit is brought by the plaintiff, as the tutor of a minor, named Will Champion, for damages for personal injuries alleged to have been received by the minor through the fault and negligence of the defendant. His cause of action, as set out in the petition, is:  That while in the employ of the said railroad company, and wholly without fault on the said minor's part, but solely and entirely on account of the gross fault and negligence and carelessness of the said railroad company, its officers, agents, and supervisors, the said minor received painful and permanent injuries which will be hereinafter more fully set forth. That on or about the 2d day of October, 1905, the said William Champion, while employed as aforesaid by the said railroad company, as a section hand on defendant company's line of railroad, at or near Quitman, Jackson parish, La., and in which said capacity he had been employed for about one month previous to his said injuries, the road master of said railroad company, P. H. McCormick, who was in general charge for said company, came along with a work train of said railroad company and picked up and took charge of the section crew with which the said minor was then working, and proceeded to a point about one-half mile south of Quitman, which is in your said parish and state, where he ordered several men and boys, among whom was the said minor Champion, to load onto a flat car, by means of skid poles, a lot of heavy piling, which was a dangerous employment. That said minor was young and of tender years, whol-

ly without experience in that kind of work, and was totally without a knowledge of the dangers incident thereto. That the work thus performed by the said minor was done pursuant to the direction of the said McCormick, who was superintending the work, upon whose superior knowledge he, the said Champion, had a right to rely and did rely. That the said minor was not warned of the danger thereof, nor instructed as to the proper method to perform such duties. That said work was being done in an improper and dangerous manner. That the appliances were inadequate, unsafe, and unfit for the purpose for which they were being used. That there were not sufficient men employed for the loading of said piling. That while attempting to load, as aforesaid, a green heavy piling, 34 feet long, by rolling the same up the said skid poles, the position of the said minor being in between the said skid poles, one end of the piling struck a knot, or other obstruction, on said skid poles, and slipped. That on account of the said knot or obstruction, the improper and unfit character of the skid poles, and other appliances, the lack of the proper kinds of appliance, and the insufficiency of men employed, the said piling suddenly fell, the said minor, Champion, being unable to get out of its way, catching the said minor as it fell, and pinioned him to the earth, crushing the bone above his right knee, tearing and bruising the flesh, and causing other severe and painful injuries. That while thus pinioned down, and afterwards, the said Champion suffered great pain and agony. That after being released he was confined to his bed for 70 days, about 45 days of which time he was compelled to remain continually flat of his back. That during that time he continued to suffer, and still suffers, great pain. That he had been since the injury wholly unable to perform any manual or physical labor, the only means by which he has to earn a living, and that he is inform-

ed, and believes, and so believing alleges, that the said injuries to the said Will Champion are permanent. That prior to the said injuries the said minor was a sound and healthy colored boy 15 years of age, and earning $1.50 per day. That he owes, and has paid out, up to the present time, for drugs, medicines, doctors' bills, and board, more than $150. Petitioner avers amicable demand without avail.

In view of the premises, he prays for citation and service hereof according to law on the said Rock Island, Arkansas & Louisiana Railroad Company, and after due proceedings and delays, and trials hereof on the merits, that there be judgment in favor of petitioner, for the use and benefit of the said minor, Will Champion, and against the said Rock Island, Arkansas & Louisiana Railroad Company, for the full sum of $10,000.

Defendant answered: It denied that it was indebted to the plaintiff for the use and benefit of Will Champion, or on any other account, in the sum of $10,000, or in any other sum.

It denied that Will Champion, by reason of the fault, negligence, and carelessness of the defendant, or of its officers, agents, or supervisors, received painful or permanent injuries of any character, and states that, if said Will Champion has received any injuries while in the employ of this defendant, said injuries were the result of his own contributory negligence. It denied that P. H. McCormick was, on the 2d day of October, 1905, or at any other time, in general charge of said company or its work train. It denied that said minor was ordered by said P. H. McCormick, or by any agent or employé of this company, to load a lot of heavy piling on a flat car, and denied that said loading was a dangerous employment. It denied that said Will Champion was without experience of that kind of work, and denied that he was without knowledge of the dangers inci-

dent thereto; but states that, if said Will Champion was at any time while in the employ of this defendant engaged in loading piles, he did so with full knowledge of the dangers incident thereto, if any, and it denied that he did any such work pursuant to the directions of said McCormick, or of any other agent or employé of this company.

It denied that said Will Champion had a right to rely, or did rely, upon the superior knowledge of the said McCormick, or of any other employé of this company. It denied that any such work was being done in an improper and dangerous manner, as alleged in the complaint; that the appliances when in use were inadequate, unsafe, and unfit for the purposes for which they were being used; and denied that there were not sufficient men employed for the loading of said piling.

It denied that said piling fell and caught said Will Champion as it fell; denied that it pinioned him to the earth; denied that said piling crushed the bones upon the right knee of said Will Champion; denied that it tore or bruised the flesh; and denied that he was thereby caused severe painful injuries.

It further denied that said Will Champion, by reason of any act or omission or negligence of this defendant, or its agents or employés, suffered pain or agony of any kind; denied that by reason of any act or omission on the part of this defendant, or its employés, said Will Champion was confined to his bed for 70 days, or for any other length of time; denied that he was thereby unable to perform manual or physical labor; denied that his injuries, if any he had, were permanent; and denied that he had paid for drugs or medicines and doctor's bill and board, or for any such account $150, or any other sum.

In view of the premises, defendant prays to be hence dismissed, with costs.

It filed, subsequently, an amended answer, in which it averred that plaintiff is without authority to prosecute this suit and stand in judgment. (2) That Will Champion was, at the time he was employed and entered into the service of defendant, a well grown and developed man, was intelligent, was capable of appreciating and understanding the ordinary risks and dangers incidental to and connected with said employment, and that by entering and remaining in said employment he assumed the risk and danger which resulted in his alleged injury. (3) That if said Champion was injured through the negligence or fault of any one other than himself, which was denied, such negligence or fault was the act, fault, or negligence of a fellow servant, or servants who were in all respects competent, and in whose employment defendant was careful and without fault or negligence.

In view of the premises, defendant prays that this motion be sustained, that this amendment be allowed, for all necessary orders, and, otherwise adopting the allegations of its original answer, that plaintiff's demand be rejected at his cost, and for general relief.

The district court rendered judgment in favor of the plaintiff for $1,000, with legal interest from date of the judgment. Defendant has appealed. Plaintiff prayed for an increase in the judgment to $3,000.

## Opinion.

In the brief filed on behalf of plaintiff, it is claimed that he sought on the trial to make out a case against a corporation he had not sued, and that there was not a word of evidence to connect the defendant company with the accident. The only effect of our reaching the conclusion that the defendant had not been properly connected by evidence with the accident would be to set aside the judgment and remand the cause for further proceedings. If that were true, we are satisfied that fact would have been the result of the course pursued by the defendant on the trial. The very vigorous resistance made by it to plaintiff's demand on the facts of the

case, also the allegations of defendant's answer, were calculated to throw plaintiff off his guard. If defendant had no connection with the open car, the workmen, and the work in which they were engaged, it would have placed its defense squarely and specially on that ground. It did not do so, but led plaintiff to believe by its allegations that it was directly interested in the case. The court below acted upon that theory, and we are very reluctant to throw the costs of this appeal, under the circumstances, upon the plaintiff, when we feel satisfied that the fact of the defendant's connection with the accident could be ultimately shown. It is true that the injured boy declares that he was in the employ of the Arkansas Southern Company, and that McCormick, the foreman, made the same declaration as to himself; but defendant alleges itself that the "boy was, at the time he was employed and entered into the service of the defendant," a well grown and developed man, and it denied that the work was done under the directions of McCormick, or any other agent or employé of the company. It also avers that the fellow workmen of the boy were, in all respects, competent, in whose employment defendant was careful and without fault. Defendant does not deny as a fact that it is not liable for the damages flowing from the accident, if there was such liability for the same. It did not ask for a new trial, and urge that point as a ground for one. We think the proper course is to deal primarily with the case as the district court did. We do not understand defendant now to contest the fact that the boy had his leg or thigh broken when engaged in the work of loading a lot of piles upon a box car near Quitman, and that he suffered much pain from the injury received therefrom. It questions, however, the extent and the effect of the injury, and insists that it was an accident such as might well happen without fault at all, and that it was one of which the boy assumed the risk. If, however, there was fault or negligence, defendant insists that it was the fault and negligence of a fellow servant, for which it is not responsible.

The circumstances under which the boy was injured were these: A squad of about 25 workmen were engaged in loading piles from the ground into an open car standing on the railroad track. For that purpose two skids were placed in position, one at each end of the side of the car; one end of the skid resting on the ground, the other on the edge of the car several feet above their lower ends. The negro hands rolled the pilings up the skids with their hands, until they got near enough to the car to be caught by cant hooks held by three men, who were stationed on the car for that purpose. On the day in question, a pile had been rolled up the skids to within a couple of feet of the car, and had been caught by cant hooks from above, when either the cant hook which held one end of the pile came out, or the man holding the hook let it slip out of his hand. The moment this happened the pile commenced to roll down the skids at that end, and the detached cant hook fell to the ground. Just before this occurred, several of the men who had been engaged in pushing up the pile were sent to the lower end of the skids to raise them so as to facilitate the men with the cant hooks in pulling up the pile into the car. As soon as the pile began to roll down the skids, the workmen who had been pushing it up, fearing they would be crushed by its fall, let go their hold and ran to the rear. By so doing all escaped but the boy, Champion. The falling pile knocked him down, and in doing so broke his thigh. It is that injury which has given rise to this suit. Plaintiff claims that the falling of the pile was due to the fact that some of the men holding up the pile were detached by the foreman and sent to the rear to lift up the lower ends of the pile, leaving an insufficient number to hold it up, and the man at

the upper end either did not grapple it securely, or the hook slipped out of his hands. However that might be, plaintiff claims that the method adopted of rolling up the pilings was imprudent and dangerous, and in view of that fact precautions should have been taken by the company by means of ropes or otherwise to meet the contingency of the piling slipping, and rolling down, but that no such precautions were taken. It is urged on his behalf that the boy was not warned as to the danger, nor instructed what he was to do in case of accident, and that he had a right to rely upon the judgment of the foreman as to whether the mode of loading the piling was dangerous or not. Defendant insists, on the other hand, that the probability or possibility of danger was apparent, and that the boy in entering into the employment and engaging in the work, assumed the incidental risks thereof; and, furthermore, that if the hook or hooks slipped from the hands of the man upon the car, or if he failed to successfully grapple the pile with the hook, it was the act of plaintiff's fellow workmen, for which it is not responsible.

McCormick, the foreman in charge of the loading of the piles, testified as follows:

"Q. How do you say this piling fell?
"A. The men let go of it. I told them to be careful and not let the piling fall. They were talking and going on, and you know how negroes are.
"Q. How did you happen to halloo to them?
"A. Because I heard them talking, and they had no business talking when they were doing such work.
"Q. Had they been talking before that?
"A. Yes, sir; I told them about it several times.
"Q. How long before that pile slipped had you told them to be careful?
"A. Several days before that. I told them every day.
"Q. I mean this particular day, when you told them to be careful; how long was it before the piling fell after that?
"A. I don't remember that.
"Q. Do you remember whether it was the pile just previous to this one, or whether it was this one, or what pile was it?
"A. We loaded a car or two. It would go all right at times, and then at other times they

would get to talking, and you would have to call them down to get them to do the work right.
"Q. What was your idea in telling them to quit talking and be careful? Was it because you considered it dangerous?
"A. It was negligence in their work in not attending to it. I told them that.
"Q. Was it because you thought it was dangerous?
"A. No, sir; I don't think it was particularly. I didn't want them talking.
"Q. Why did you tell them to be careful if it was not because you thought it was dangerous?
"A. I don't know; but in doing that kind of work it was dangerous for men to be talking, and they get demoralized and careless, for if they let go of the pile it is bound to hurt somebody, and unless there is somebody to correct them there is no telling what they would do.
"Q. Did you see the pile at the instant it fell?
"A. Yes, sir; I was standing there.
"Q. Looking at it?
"A. Yes, sir.
"Q. Why do you say it fell?
"A. Because the men let go and ran away.
"Q. They just pushed it up, and then turned it loose and ran away?
"A. Some of them got careless and talking, and going on, and I ordered them to go back to raise the skids behind, and the pile came rolling down.
"Q. What went with the fellows who were trying to raise the skids?
"A. They all got away but Will Champion.
"Q. What was he doing?
"A. Rolling the pile up on the car.
"Q. How high was that pile upon the skid when it fell?
"A. You mean how far was it on the skid?
"Q. Yes.
"A. About two feet of the top of the car."

Plaintiff's witnesses testified that, when the pile commenced falling, it was above their heads, and they were pushing it up with their fingers.

Under a bill of exception reserved, plaintiff urges that defendant has no right to advance as a defense to this suit the doctrine of contributory negligence, assumption of risks, or fellow servants, for the reason that they were set up for the first time in an amended answer, which was presented after the case had been fixed and called for trial, and both sides had announced themselves ready after the petition and answer had been read, and plaintiff was about to introduce

his evidence; that it was too late at that time to offer such an amendment; that it was inconsistent with and contradictory of the original answer; that it changed the issue and took plaintiff completely by surprise. We do not think the amended answer changed the issue, nor see wherein it was inconsistent with, or contradictory to, the original answer. We do not see anything in it calculated to take plaintiff by surprise. It simply announced to plaintiff its intention of invoking all the facts and circumstances constituting the res gestæ of the accident. We think it was defendant's right to do this, independently of this amended answer, and under the general issue. The answer contained no plea by way of confession and avoidance, but resisted plaintiff's demand throughout by way of denial. That plaintiff was not in fact surprised by the amendment was shown by his making no attempt to obtain a continuance. The particular judgment which the court would render in the case would depend upon the whole evidence adduced on the trial. The defense of "assumption of risks" and that of "fellow servants" spring directly, and at once, out of the relations of master and servant existing between parties, and govern and control, by reason of that relationship, the rights and obligations of the parties inter se. Dresser on Employer's Liability, 82, says:

"When a person engages to work for another, both a contract and a status are created. * * * Although the contract of hiring depends upon the same principles as other contracts, yet it has one peculiarity, in that it creates a status or relationship between the parties to which the policy of the law has affixed certain rights, duties, and liabilities to be observed by each, irrespective of any understanding or supposed agreement between them. These duties and liabilities arise when the relation is created, and continue until it ends, and for the most part are determined by the condition of affairs when the contract of hiring is made. It is usual and convenient to treat them as terms of an implied contract; but it is a contract implied from the relationship, and not from the agreement of the parties, and has none of the incidents of a technical contract."

We are of the opinion, under the evidence, that defendant was to blame in not having taken proper precautions to guard against the contingency of the piling slipping back upon the skids and detaching and sending to the rear some of the workmen who were holding up the pile, at the precise moment when this should not have been done. It may be true that the failure of the man on the car to grapple the pile with the hook may have been the cause of its slipping down the skid, and, if so, this act was one of a fellow workman; but, if the act of the workman did not result from his own independent personal want of care or prudence, but from the increased risk of accident resulting from the employer having placed him in a position of greater danger than the necessities of the work in which he was engaged required or called for, without adopting correspondingly greater precautionary measures, the employer assumes the risk that no injurious consequences will follow, unless it is shown affirmatively that he was guilty in the premises of a fault. Lindsey v. Tioga Co., 108 La. 468, 32 South. 464, 92 Am. St. Rep. 384. The running of the other workmen from under the falling pile was no fault on their part. Had they not done so, several of them, besides the plaintiff, would have received injury.

The injury received by the plaintiff resulted to the extent of a half or three-quarters of an inch in the shortening of one of his legs; but it is not established that it will not materially interfere with his ability for work; nor does it greatly affect his appearance or walk. Plaintiff is able to jump off cars in motion with facility.

We see no reasons for amending the judgment. It is hereby affirmed.